[Civ. No. 14216.   Second Dist., Div. Three.   Apr. 6, 1944.]

JOHN B. HART, Respondent, v. ANDREW ERICKSON, Appellant.

Barry Sullivan for Appellant.

B. Dean Clanton and Sidney N. Bachtell for Respondent.

SHINN, J.—In 1926 Ella Horner was the owner of a small home in Los Angeles. She and John B. Hart (plaintiff) entered into an agreement, by the terms of which they agreed to intermarry, John agreed to pay off a certain mortgage on the home, to make all necessary repairs and improvements thereon, to pay all city and county taxes assessed against it, and to care for and provide for Ella, and she agreed to convey to him an undivided two-fifths interest in the home. They married May 11, 1926, and lived together until Ella's death in August, 1941. John paid off the mortgage and in all respects kept his part of the agreement. On September 3, 1926, Ella and John went before a notary and Ella signed and acknowledged a deed which in terms conveyed to John an undivided two-fifths interest in the home property. She did not deliver this deed to him or record it and no one appeared to have known what became of it. The court found that Ella did not intend that the deed should then convey to John an interest in the property but that John then and at all times thereafter believed that she had done so and that he owned a two-fifths interest in the property, and that he fulfilled the agreement on his part in the belief that Ella had conveyed

or would convey to him the interest as agreed. There was evidence as to a written agreement between them at that time which we shall mention later. However, in January, 1935, Ella again went to a notary and signed and acknowledged a deed of gift of the property in favor of her nephew, defendant Andrew Erickson. She left this deed in the possession of the notary, with instructions to record the same upon her death, which was done according to instructions. John knew nothing of this deed until after his wife's death.

John had himself appointed administrator of his wife's estate and brought suit as administrator and also individually against Erickson to quiet title and to cancel the deed to Erickson. He sought to recover a two-fifths interest in the property for himself and a three-fifths interest for the estate. Erickson filed a cross-complaint by which he sought to have his title confirmed, to recover possession of the property, and certain other relief to be hereinafter mentioned. The court found the facts as we have stated them, although much more fully, adjudged title to be in Erickson and declared a lien in favor of John B. Hart for the sums he had expended in improvement of the property and for taxes, in the amount of $3,054.61, less certain deductions, and ordered that the property be sold to satisfy the lien if the sum of $2,452.61 should not be paid within 90 days after entry of judgment. Erickson appeals.

In appellant's opening brief nineteen separate points are listed; twelve are listed in respondent's brief, but these cannot be identified with the ones in appellant's opening brief, and neither brief makes mention of the point which is decisive of the appeal. ■ On the findings the court should have given judgment in favor of plaintiff, John B. Hart, declaring him to be the equitable owner of a two-fifths interest in the property. Perhaps counsel have failed to see that this would have been a proper judgment because of the extreme demands of their respective clients, neither of whom admits that the other has any interest in the property.

■ Where a vendee under an oral contract of purchase enters into possession of real property, pays part or all of the consideration, makes valuable improvements and performs all of his obligations under the contract with a design to carry the same into execution, a court of equity will decree performance by the vendor under the doctrine of estoppel. (See cases listed 25 Cal.Jur., p. 479.)

The findings establish the following as facts: John and Ella entered into an agreement under which John was to receive a two-fifths interest in the property; as will appear later, the consideration to be paid by John was adequate; he in good faith fully performed the agreement on his part; in so doing he believed and relied upon Ella's promise to convey him the agreed interest; and at all times after his marriage he in good faith claimed to own a two-fifths interest in the property adverse to all the world; he continuously lived on the property until his wife's death and was living there at the time of trial, and, as stated in the findings, "Andrew Erickson has at all times had knowledge of plaintiff's claim of interest and adverse possession and occupancy and knowledge of the improvements, repairs and taxes made and paid by plaintiff during the marriage and his reliance upon the aforesaid agreement between plaintiff and deceased; the court further finds that no consideration whatsoever was paid by said Andrew Erickson for said deed but that said defendant is a nephew of deceased." The conveyance to the latter was found to be subject to a life estate in Ella.

The case in its legal aspects is the following: John had a right to receive from his wife a conveyance of a two-fifths undivided interest in the property by virtue of the agreement between them, because it was fully executed in good faith on his part and his performance constituted an adequate consideration for the interest which he was to receive; defendant Erickson was a volunteer, with actual knowledge of John's possession, his claim of interest and his expenditures of money on the faith of his agreement with his wife. All of these facts must be deemed to have been supported by the evidence, for the reason that the sufficiency of the evidence to support them is not challenged by appellant. It is true that reference is made to the testimony of plaintiff under a specification headed, "The Evidence is Insufficient to Support the Judgment for any Interest in said Land in Favor of John B. Hart," but the exceedingly brief quotations give excerpts from plaintiff's testimony that are entirely favorable to defendant and no other testimony is referred to or quoted.

Incidentally, it may be noted that upon cross-examination of plaintiff, testimony was developed to the effect that the agreement between John and Ella was in writing and was duly executed, although Ella kept both copies. While it makes

no difference whether it was oral or in writing, in view of its having been executed on the part of plaintiff, in the light of the uncontradicted testimony the finding that the agreement was made might fairly be construed as a finding that it was a written agreement.

■ Upon the findings the judgment should have awarded plaintiff John B. Hart an undivided two-fifths interest in the land. ■ One who is in possession of real property under a valid enforceable agreement by which he is acquiring the land or an interest in it, and who fulfills his agreement, cannot be defeated of his right by a subsequent conveyance of the land to a third person, unless the latter be a purchaser in good faith and for value, paid or rendered without notice or knowledge of the earlier equity of the one in possession. Whether the occupancy of the property by John jointly with his wife was constructive notice of his rights is immaterial in view of the finding of actual knowledge, but even without this finding, want of notice or knowledge of an outstanding enforceable prior right would be of no avail to Erickson, who took title under a deed of gift. Verification of these statements will be found in the cases and texts on the law of vendor and purchaser.

■ The evidence upon which the material findings were based came in without objection and therefore no question can be raised as to the sufficiency of the pleadings to admit it. Any omission to allege all of the facts necessary to justify a decree of specific performance in favor of plaintiff was waived by failure to object to evidence tending to show that the contract was just and reasonable and the consideration adequate, and these elements were fully established by the proof.

The judgment awarded plaintiff a lien in the gross amount of $3,054.61. This amount was reduced to $2,452.61 by charges against plaintiff for use of a portion of the property, and for rentals collected, subsequent to the death of his wife. The property is worth only $3,500. Defendant states this to be a fact, plaintiff does not question it, and we find that it is supported by the testimony of plaintiff which defendant in his brief adopts as true. Plaintiff's two-fifths interest in the land was therefore worth $1,400. The gross lien awarded in his favor amounted to six-sevenths of the value of the property. In no event should plaintiff receive greater compensation for breach of the agreement than he would have re-

ceived had it been fully performed by his wife. The judgment must therefore be reversed.

We note from the supplemental clerk's transcript that defendant has been placed in possession of the property under a writ of possession as of January 20, 1943.

Upon a retrial of the case the only issues to be tried will be those pertaining to the rights of tenants in common under the facts established. The findings do not determine these questions and we do not undertake to say what the rights of the parties may be. In view of the foregoing disposition of the case it is unnecessary to consider the matters discussed in the briefs of the parties.

The judgment is reversed with directions to the court to enter judgment decreeing plaintiff, John B. Hart, to be the equitable owner of an undivided two-fifths interest in the property, that the same be conveyed to him by Erickson; that Erickson is the owner of an undivided three-fifths interest, and for such further proceedings as may be appropriate to settle the claims of the parties arising out of the use and occupation of the property, the collection of rentals, and related matters. Appellant to recover costs on appeal.

Desmond, P. J., and Wood (Parker), J., concurred.

Appellant's petition for a rehearing was denied April 19, 1944, and the judgment was modified to read as above. Appellant's petition for a hearing by the Supreme Court was denied June 1, 1944.